# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **GREGORY SUSLOVIC,** | ) | **Case No. 1:06CV116** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE SARA LIOI** |
| | ) | |
| **v.** | ) | |
| | ) | **MEMORANDUM OPINION** |
| **BLACK & DECKER, INC., ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

Plaintiff Gregory Suslovic (plaintiff) filed the present action against defendant Black & Decker (U.S.) Inc. (defendant)[1] challenging his discharge in a reduction in force as unlawful age and disability discrimination under federal and Ohio statutory law (Docket No. 1, Complaint). Plaintiff also claims that his termination violated Ohio public policy.

Pursuant to Fed. R. Civ. P. 56(c), defendant has sought dismissal of all claims in plaintiff's Complaint (Docket No. 32). Plaintiff opposes the motion (Docket No. 48), and defendant has filed a reply (Docket No. 56). For the reasons that follow, defendant's summary judgment motion is **GRANTED**.

---

[1] The Complaint actually identifies "Black & Decker, Inc" and "Porter-Cable" as defendants. Defendant maintains, and plaintiff does not contest, that the correct Black & Decker entity is "Black & Decker (U.S.) Inc. and Porter-Cable is not a separate entity, but, rather, was acquired by and integrated into Black & Decker (U.S.) Inc. Thus, the judgment rendered herein will pertain to both Black & Decker (U.S.) Inc. and Porter-Cable, even though reference is made to defendant in the singular only.

I.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was originally hired by Porter-Cable/Delta (PCD), a tool manufacturer and retailer, in 2000, when he was 49 years old (Docket No. 43, Plaintiff Gregory Suslovic Deposition at 45).[2] He started as a manager trainee and, in May 2001, at age 50, plaintiff became the manager of PCD's Cleveland Service Center, where PCD sold and repaired tools and equipment (Plaintiff Dep. at 45, 67-69). The Cleveland Service Center was one of 25 such centers across the country operated by PCD (Docket No. 42, James W. Reynolds Deposition at 39; Docket No. 44, Victor Bass Deposition at 94).

For the bulk of his time with PCD, Dennis Dallaglio, an Area Manager who is four years older than plaintiff, was plaintiff's supervisor (Plaintiff Dep. at 69; Docket No. 41, Gregg D. Chamberlain Deposition, Ex. 8). Sometime in October 2004, LaVerne Jones, the Area Manager who originally recruited plaintiff to join PCD, became plaintiff's supervisor (Plaintiff Dep. at 75; Docket No. 39, Laverne Jones, Jr. Deposition at 15). Jones is one year older than plaintiff (Plaintiff Dep. at 76; Jones Dep. at 15).

While it is a matter of contention between the parties, it appears from the record that PCD was generally satisfied with plaintiff's performance as a manager. In 2001, Dallaglio gave plaintiff an overall rating of 3.5 on a scale of one to five, with one being unacceptable performance and five being performance that far exceeds expectations (Plaintiff Dep., Ex. Q). His performance improved in 2002, Dallaglio gave him an overall rating of 4.0 (Plaintiff Dep., Ex. K, L, R). In 2003, plaintiff received an overall rating of 3.0, which translated

---

[2] All depositions and exhibits in this matter have been filed under seal pursuant to the Court's September 9, 2006 Stipulated Protective Order (Docket No. 13).

into a "meets expectations" assessment (Plaintiff Dep., Ex. S).

According to defendant, plaintiff's Achilles heel was his difficulty dealing with subordinates. In his 2001 appraisal of plaintiff, Dallaglio noted that plaintiff "sometimes has shown a problem remaining calm in a stressful situation" (Plaintiff Dep., Ex. Q). Similarly, in his 2002 evaluation, there appears a notation that "[t]here has been some animosity towards the manager which will need to be worked out…"[3] (Plaintiff Dep. 166, Ex. R).

Plaintiff insists that other facts speak to his efficiency and effectiveness as a manager for PCD. Plaintiff underscores the fact that he received praise from various supervisors and company-wide accolades during his time as a PCD employee. In 2002, the Cleveland Service Center was awarded Branch of the Year (Plaintiff Dep. at 139-140, Ex. K, L, R). In an email to plaintiff noting the accomplishment, Dallaglio observed:

> Well you did it! You can rest easily now! Congratulations to you and your complete Cleveland team for a job well done. You guys were the best our service organization had to offer in 2002. I appreciate all your hard work. You cannot end up in the number one spot without working your backside to the bone. And I know you did just that.
>
> Finally, to think that a rookie branch manager (at least this is your first full year) is the number one sales guy says a lot for you. In my mind it says that we have a hard working, dedicated, knowledgeable, and very competent manager. Of course I knew that about you from our association more than twenty-five years ago. Thanks again.
>
> I'm sure glad you are part of my areas team and not that other team you came from originally!!

(Docket No. 48, Attachment 2, Declaration of Gregory Suslovic, Ex. 2).[4]

In early 2004, plaintiff learned that PCD was up for sale and feared that

---

[3] While Jones never completed a formal performance review of plaintiff, he testified in his deposition that he believed that plaintiff "was an aggressive manager, a hardworking manager, a dedicated manager. He had all of the right aspects of being a good manager except for his inability to get along with people" (Jones Dep. at 60). Jones testified that he verbally counseled plaintiff about a number of complaints from customers (Jones Dep. at 24-25, 62, 75-84, 92-93).

[4] Defendant notes, however, that the Cleveland Service Center also won the award the year before plaintiff stepped in as manager (Plaintiff Dep., Ex. Q).

the sale of the company would result in the loss of his job (Plaintiff Dep. at 34-35). He testified that this news "threw him into a depression," and caused him to enroll in PCD's Employee Assistance Program (Plaintiff Dep. at 39). The company program's therapist referred him to a psychiatrist, who diagnosed plaintiff with "severe depression" (Plaintiff Dep. at 35-36, 38-39). According to plaintiff, his treating psychiatrist prescribed various medications to combat his depression (Plaintiff Dep. at 35-36).

While plaintiff did not discuss his medical condition with many employees at PCD, he told Jones in early 2004 that he was on antidepressants and was seeing a psychiatrist (Plaintiff Dep. at 77-78). It was a brief conversation, and plaintiff does not believe that he ever discussed it with Jones again (Plaintiff Dep. at 78-79). While plaintiff did not recall discussing his condition with anyone else at PCD, Dallaglio testified that he also had one conversation with plaintiff on the subject that lasted less than 10 seconds (Plaintiff Dep. at 72-73; Dallaglio Dep. at 58-59).

In October 2004, Black & Decker purchased PCD and thereafter engaged in an integration of the operations of the two companies, including the two companies' service centers (Plaintiff Dep. at 90-91; Docket No. 44, Victor Bass Deposition at 47). Victor Bass was named Vice President of the Product Service Division of the newly combined company in early November 2004, and was assigned the responsibility of overseeing the integration of the product service divisions of PCD and Black & Decker (Bass Dep. at 8-9, 47, 65).

At the time of the merger, Black & Decker had 88 service centers across the country, while PCD had 25 (Reynolds Dep. at 38-39). Seventy percent of Black & Decker's service center business was repairs and parts related, while the remaining thirty percent was retail sales of Black & Decker's products (Bass Dep. at 94). PCD's service centers were the

4

mirror opposite. Thirty percent of PCD's business at its service center was repair and parts related, while the remaining seventy percent comprised retail sales of PCD products. For purposes of integration, management decided to go with Black & Decker's business model, with an emphasis on repairs and parts (Bass Dep. at 68-69, 94).

All 25 of PCD's service centers, including the Cleveland Service Center that was managed by plaintiff, were in markets in which there was also a Black & Decker service center (Reynolds Dep. at 38-39). Bass determined that, because the chosen business model could not support two service centers in each market, one of the two would be closed and its operations consolidated into the remaining facility (Bass Dep. at 70). This consolidation translated into a need to eliminate excess personnel (Bass Dep. at 70-71).

To facilitate the consolidation, defendant formed a Service Integration Team (SIT), headed by Bass (Bass Dep. at 60). The SIT determined that it would try to retain the strongest managers to run each of the newly consolidated service centers. *Id*. at 95. To that end, in November 2004, all of the Black & Decker and PCD managers were rated in various categories and ranked (Reynolds Dep. at 16-17). According to defendant, the forced rankings were used to separate the managers into three categories: "A players," "B players," and "C players."[5] *Id.* at 89-90. Plaintiff insists that the decision as to which category each management employee would be placed was decided prior to the completion of the forced ranking sheets. In any event, those identified as A or B players were to be retained and those identified as C players were to be terminated (Bass Dep. at 89-91, 139-140, 143). It is undisputed that plaintiff was identified by the SIT as a C player (Jones Dep. at 39).

In December 2004, a meeting was held in Hampstead, Maryland, at which

---

[5] A C player was someone who was "performing the job," but who fell towards the bottom of the pack in a head-to-head comparison with the other service center managers (Reynolds Dep. at 76-77).

these rankings and groupings were discussed (Reynolds Dep. at 15-16). By the end of the meeting, a consensus had been reached with respect to the relative performance of all of the service center managers, including plaintiff [6] (Bass Dep. at 186; Swift Dep. at 36, 40-41).

The Black & Decker service center manager in Cleveland was Mark Konecek. At the time of the consolidation, Konecek was 36 years old (Chamberlain Dep. I, Ex. 6). Konecek had been employed by Black & Decker since 1994, almost six years longer than plaintiff had been employed by PCD. *Id.* He was identified as a B player by the service center management team, including Bill Swift, Konecek's manager (Swift Dep. at 131). According to defendant, because Konecek was a B player and plaintiff was a C player, Konecek was retained as Manager of the consolidated Cleveland Service Center (Bass Dep. at 129-130).

Plaintiff was advised in January 2005 that his position was being terminated (Plaintiff's Dep. at 94-95). Because the consolidation took several months, plaintiff remained employed by defendant for approximately five more months, until June 3, 2005 (Chamberlain Dep. II, Ex. 78). Prior to his departure, plaintiff earned and received a retention bonus for not resigning his employment prior to his termination date set by defendant, and remained eligible to apply for any position that was advertised on defendant's internal job posting site (Plaintiff Dep. at 99, 106-08, 206-209).

Plaintiff applied for only one position available during his five-month notice period:  Cincinnati Service Center Manager (Plaintiff Dep. at 107-108). Jones selected the PCD Miami Service Center Manager, Kenston Demaray, age 41, over plaintiff (Chamberlain

---

[6] Jones, plaintiff's supervisor; Dallaglio, plaintiff's prior supervisor; Reynolds, plaintiff's second-level supervisor; and Bass, plaintiff's third-level supervisor all testified that they agreed with plaintiff's rating as a C player (Jones Dep. at 63; Dallaglio Dep. at 148; Reynolds Dep. at 121; and Bass Dep. at 190).

Dep. I, Ex. 8). Demaray had been designated an A player.[7] The Black & Decker Miami Service Center Manager had also been identified as an A player, and was selected over Demaray to manage the consolidated Miami Service Center (Jones Dep. at 54-56, 66). Because Demaray had been designated an A player, while plaintiff had been identified as a C player, Jones testified that Demaray was offered the opening in Cincinnati (Jones Dep. at 65-67).

Plaintiff filed the present lawsuit on January 17, 2006[8] (Docket No. 1). In his Complaint, plaintiff alleges that his discharge and the failure to rehire him was the result of unlawful age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq*., and Ohio Rev. Code § 4112.02. He also raises a claim of disability discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*., and Ohio Rev. Code § 4112.02. He further claims that his termination and the refusal to transfer him into an available position violated the public policy of Ohio.

In its summary judgment motion, defendant argues that plaintiff cannot prove that his discharge in a reduction in force (RIF) was the result of unlawful age or disability discrimination. Likewise, defendant contends that plaintiff cannot establish that his non-selection for the Cincinnati position was motivated by his age or disability. As will be discussed below, there are no genuine issues of material fact relating to plaintiff's claims, and all of the established facts fall short of demonstrating age or disability discrimination sufficient to stave off summary judgment. Consequently, defendant's summary judgment motion is **GRANTED.**

---

[7] Demaray had been employed by PCD since 1990, more than 10 years longer than plaintiff (Chamberlain Dep. I, Ex. 8). Also, he had been a service center manager five years longer than plaintiff (Chamberlain Aff. at ¶ 3, Ex. 1).
[8] This matter was originally assigned to the docket of the Honorable Peter C. Economus. The action was reassigned to the docket of the Honorable Sara Lioi on March 19, 2007.

## II.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the  matters stated therein [. . .]. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n*., 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

8

(1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), *citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*. It is against this backdrop that the Court considers defendant's dispositive motion.

### III.

### LAW AND ARGUMENT

A.    **Age Discrimination**

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 492 (1973), the Supreme Court set forth the formula courts should rely upon in evaluating claims of discrimination, and

the same analysis is generally applied in ADEA cases.[9] *See Chappell v. GTE Products Corp.*, 803 F.2d 261, 265 (6th Cir. 1986). The burden of proof established in *McDonnell Douglas*, and later clarified by *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981), is divided into three stages.

At the first stage, the plaintiff must prove a *prima facie* case of age discrimination. *Burdine*, 450 U.S. at 252-53. If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id., quoting McDonnell Douglas*, 411 U.S. at 804. If defendant meets this burden, the final stage requires the plaintiff to prove that the proffered reason was merely a pretext for unlawful discrimination. *Burdine,* 450 U.S. at 253, *citing McDonnell Douglas*, 411 U.S. at 804. Pretext is established by a direct showing that "a discriminatory reason more likely motivated the employer or by an indirect showing that the employer's explanation is not credible." *Burdine,* 450 U.S. at 256. *See Kline v. TVA*, 128 F.3d 337, 342-43 (6th Cir. 1997).

Generally, to make out a *prima facie* case of age discrimination, a plaintiff must show that he was in the protected age group (40-70), that he was discharged, that he was qualified for the position, and that he was replaced by a younger person. *Chappell*, 803 F.2d at 266; *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 69 (6th Cir. 1982). Such a showing is not sufficient, however, in a reduction in force case.

"The mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a *prima facie* case of age discrimination." *LaGrant v. Gulf & W. Mfg. Co.*, 748 F.2d 1087, 1090 (6th Cir. 1984). Rather, the

---

[9] Ohio Supreme Court recognized in *Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Com.*, 66 Ohio St. 2d 192, 197 (1981), that the *McDonnell Douglas* burden shifting analysis should also be relied upon in evaluating claims of discrimination under Ohio Rev. Code § 4112.02.

plaintiff in a reduction in force case must come forward with additional direct, circumstantial, or statistical evidence that age was a factor in his termination in order to establish a *prima facie* case.[10] *Id*. at 1091; *Barnes v. GenCorp., Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). *See Williams v. Tyco Elec. Corp.*, 161 Fed. Appx. 526, 536 (6th Cir. 2006) (In a reduction of force case, a plaintiff must go "beyond the four prongs of McDonnell Douglas analysis" and satisfy a "greater burden.") "The guiding principle [in a reduction in force case] is that the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age." *Ridenour v. Lawson Co.*, 791 F.2d 52, 57 (6th Cir. 1986).

Plaintiff has easily satisfied the first three prongs of the *prima facie* case. At the age of 53 at discharge, plaintiff was a member of the protected age class. Also, he clearly suffered an adverse employment action in that his position with defendant, for which he was qualified, was eliminated and he was discharged from defendant's employ. Further, while there is considerable evidence that employees older than plaintiff were retained, there is also evidence that employees younger than plaintiff survived the consolidation process. Because the discharge occurred in the context of a consolidation and a reduction in force, however, this showing, alone, is insufficient to establish a *prima facie* case of age discrimination. *See Barnes*, 896 F.2d at 1465. Plaintiff still bears the burden of coming forward with "additional direct, circumstantial, or statistical evidence" showing that age was a factor. *LaGrant*, 748 F. 2d at 1092.

1.    ***Direct Evidence***

Direct evidence of discrimination would be evidence that, which if

---

[10] It is important to note what constitutes a true reduction in force case. A reduction in force occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a reduction in force when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. *Barnes*, 896 F.2d at 1465. The record clearly supports a finding that plaintiff was discharged as part of a reduction in force.

believed, would prove the existence of a fact in issue without an inference or presumption. *Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 548 (6th Cir. 2004); *Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990). "Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, […] constitute direct evidence of discrimination." *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989). It is beyond dispute, however, that plaintiff cannot point to age-based remarks made by any manager or executive at Black & Decker or PCD, including any member of the SIT (Plaintiff Dep. at 187, 191).

   Nonetheless, plaintiff argues that he has come forward with direct evidence that defendant's managers admitted that they considered age in their determination of which service center managers to retain. Plaintiff's "smoking guns" are several documents that were prepared at the time of the consolidation. The first document is an email from Mike Weber wherein he requested the forced rankings of the managers (Plaintiff Appx. Ex. 59). In requesting the rankings, he indicates that he needed certain information, including whether "there are any Managers considering retirement, presently on a PIP or a S/C where you may desire an upgrade." *Id.* The second document is the forced ranking of the N.E. managers, prepared by William Swift. The rankings for the 19 managers did not include ages. Mr. Swift does, however, identify Joe DeSanto as someone who is eligible for retirement and lists his age as 60 years old.[11] On a separate sheet, Mr. Swift identified the managers in four of his markets. For five of the six managers, Mr. Swift noted their ages and their years of service.[12] While Mr. DeSanto was among

---

[11] With respect to Mr. DeSanto, the document provides: "Joe has not indicated when he wants to retire. However, he is 60 years old and has 41 years of service with B & D" (Plaintiff Appx. Ex. 59).
[12] Mr. Dallaglio also testified that at or before the December 2004 meeting, that Seattle Service-Center Manager Drew Newlands was eligible for retirement (Dallaglio Dep. at 84-85).

the six managers identified in this memorandum, Plaintiff was not.[13]

Of course, merely discussing employees who might be considering retirement, in the context of a reduction in force, is not evidence of age discrimination. *See Williams*, 161 Fed. Appx. at 533-534 (comment by manager that he thought that it might be best to let older employees go in a RIF because they would be retiring soon anyway was not direct evidence of age discrimination because the statement related to a legitimate concern and acknowledged the truth); *Rowan*, 360 F.3d at 549 (possible retirement of employees during a reduction in force is a legitimate concern). This Court has previously observed that there is nothing *per se* discriminatory about an employer asking an employee about retirement plans. *Murray v. Sears, Roebuck and Co.*, 722 F. Supp. 1500, 1505 (N.D. Ohio 1989).[14] *See Early*, 907 F.2d at 1085 ("To accomplish a RF by natural attrition and voluntary early retirement is lawful. Evaluations of the age of the work force as part of a restructure and reduction-in-force plan are indication of thorough business planning and are not direct evidence of discriminatory intent.") Indeed, the fact that both DeSanto and Newlands were retained, despite their apparent eligibility for retirement, further undercuts plaintiff's insistence that the reference to the status of these two employee leads to the inevitable conclusion that age was a motivating force in the consolidation (Chamberlain Aff. I at ¶ 3; Plaintiff Appx., Ex. 6; Chamberlain Aff. II at ¶ 4, Ex. 5).

As for the identification by Swift of the age of the other four employees, plaintiff notes that "when an employer lists the ages of candidates on documents used during the decision-making process, a jury may reasonably infer that an employer considered age in

---

[13] These managers were among the 18 total managers that Mr. Swift ranked.

[14] The *Murray* Court explained that "[i]n order to plan for the future of a department, a manager must be able to ask the employees whether any of them plan to move out of the area, or to return to school, or to leave their positions for any other reason. Given the clear instruction in the Sixth Circuit case law that the ADEA was not designed to trample employers' legitimate business practice, and in the absence of any allegation of hostile tone or any suggestion that Murray's departure would have been welcomed, the Court cannot conclude that [the] inquires were illegitimate." *Id*. at 1505.

reaching its decisions" (Docket No. 48 at 28). The document simply does not take plaintiff where he wishes to go.

This document was not one of the forced ranking sheets of the service center managers that were used to create the presentation at the December 2004 meeting where the final decision as to which managers to keep and which to let go was made. The forced ranking sheets, along with the other documents that were presented at the meeting, were devoid of any reference to age (See Plaintiff's Appx. Ex. 58, p.1). The document created by Swift identifying the managers in certain markets, along with the ages of five of the managers- including DeSanto, was never shown to anyone else or used by the SIT in the consolidation process (Swift Dep. at 176-177). Moreover, Swift did not participate in the ranking of plaintiff or the decision to designate plaintiff as a C player (Swift Dep. at 12, 54). Of course, "[s]tatements by non-decision-makers, or statements by decision-makers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden of demonstrating animus." *Rowan*, 360 F.3d at 550.

Despite plaintiff's suggestion to the contrary, defendant's executives uniformly testified that age was not discussed as a factor in the decisions (Bass Dep. at 186-187; Jones Dep. at 166; Swift Dep. at 174). The only evidence that age was even mentioned at the December 2004 meeting was Dallaglio's testimony that the potential retirement of PCD Service Manager Drew Newlands may have been mentioned (Dallaglio Dep. at 84-85, 155-156). As previously discussed, such a consideration is not impermissible, and in any event, Newlands was retained notwithstanding any such discussion. *See Early*, 907 F.2d at 1082.

The case law relied upon by plaintiff to support a finding of direct evidence involved cases where improper remarks regarding age were made by decision-makers.

14

*See Robinson v. PPG Industries, Inc.*, 23 F.3d 1159, 1165 (7th Cir. 1994) (remark by plaintiff's supervisor that the company would not retain its employees until they reached the age of 65 was direct evidence of discrimination); *Beshears v. Asbill*, 930 F.2d 1348, 1354 (8th Cir. 1991) (decision-maker said that older people have trouble adapting). The fact that the age of five of the many managers that were evaluated in the consolidation appeared on a document that was not a part of the forced rankings and was not presented at the December 2004 is not direct evidence of age discrimination.[15]

### 2.    *Circumstantial Evidence*[16]

Absent direct evidence of discrimination, the Court must look for circumstantial evidence showing that age was a factor. Once again, plaintiff turns to his "smoking gun" documents and asserts that "[r]eferences to age alone in the hiring process demand a court draw the inference in an employee's favor" (Docket No. 48 at 30). In support of his assertion, plaintiff relies upon *Warter v. Bergen-Brunswig Corp.*, 1998 U.S. App. LEXIS 27111 at *22 (9th Cir. Oct. 22, 1998) Plaintiff's reliance on the unreported decision in *Warter* is misplaced.

In *Warter*, the court found that management comments that the company wanted to hire "fresh, young blood," and "young, aggressive recent college graduates" supported an inference that age played a role in the plaintiff's termination. *Id*. at *6. Similarly, in another decision cited by plaintiff, "a manager allegedly told [the plaintiffs] that [the employer] 'liked to

---

[15] Plaintiff also looks to a document containing the names and ages of all of the service center managers as direct evidence of discrimination, and claims that this document was discussed at the December 2004 meeting (Docket No. 48 at 13, 31). This document was created *after* plaintiff's termination in response to plaintiff's charge of discrimination before the Equal Employment Opportunity Commission, and does not constitute direct evidence of discrimination.

[16] Though he attempts to use statistical data throughout his brief, plaintiff does not claim to be offering statistics as evidence to support his *prima facie* case. It is important to note that the statistical evidence would not advance his case. The record shows that the average age of the service center managers selected to be retained in the duplicate markets was 42, a year higher than the average age of all of the service center managers in those markets prior to Black & Decker's acquisition of PCD (Chamberlain Aff. I at ¶ 5).

promote aggressive younger people.'" *Washington v. Honeywell, Inc.*, 1996 U.S. App. LEXIS 20467 at *11 (9th Cir. Aug. 13, 1996). In finding sufficient circumstantial evidence to avoid summary dismissal, the court noted that the manager's alleged statements "went to the heart of the claim." *Id.* at 11. In contrast, in the case herein, the fact that five ages were listed on one document that was not part of the final documents upon which the consolidation decisions were made is simply insufficient to support even an inference of discrimination.[17]

Plaintiff also proclaims that "[e]vidence that the employer retained a younger similarly situated employee is sufficient to give rise to an inference of discrimination" (Docket No. 48 at 32). While plaintiff's proclamation represents a general statement of the law in a non-reduction in force case, it simply does not help plaintiff in his case. Plaintiff's representation that he was "replaced" by Konecek, a younger employee, does not find support in the record. It is undisputed that the PCD service center that plaintiff had managed was closed, and the available assets were consolidated into one facility. So when Konecek was picked to head the new consolidated center, he did not replace plaintiff. Further, plaintiff's suggestion that his termination "opened up spaces for other younger workers" is likewise unpersuasive[18] (Docket No. 48 at 32). The fact that employees, both younger and older than plaintiff, were shuffled about in the consolidation does not establish that plaintiff was "replaced" by any of the

---

[17] Likewise, the Court rejects plaintiff's declaration that "consideration of retirement in employment decisions is strong evidence of illegal age discrimination" (Docket No. 48 at 31). Retirement is not necessarily an improper consideration in a reduction in force. *Rowan*, 360 F.3d at 549. Moreover, the case relied upon by plaintiff, *Danielson v. Lorain*, 938 F.2d 681, 684 (6th Cir. 1991), is inapposite. In *Danielson*, the plaintiff alleged that her supervisor suggested that she retire, and that "when she refused, with age as a determinative factor, he began creating a paper trail to establish inadequate work to achieve his desired result." *Id.* at 684. As previously discussed, there is no evidence that any employee was pressured to retire, and the two employees of retirement age were in no way penalized for their decision not to do so.
[18] The record shows that the termination of a 39-year old allowed the retention of a 60-year old in the Auburn/Tacoma Market, the termination of a 33-year old allowed the retention of a 51-year old in the Charlotte Market, the termination of a 30-year old allowed the retention of a 50-year old in the Kansas City Market, and the termination of a 33-year old allowed the retention of a 49-year old in the Dallas Market (Chamberlain Aff. I at ¶ 5).

remaining younger employees.[19]

While plaintiff was not replaced by Konecek or anyone else, the record does establish that management selected Konecek over plaintiff to fill the position of manager of the consolidated Cleveland Service Center (Bass Dep. at 129-130). Konecek was younger than plaintiff, but he had been with Black & Decker six years longer than plaintiff had been with PCD. *See Rowan*, 360 F.3d at 550 (evidence that younger employee was better qualified than plaintiff contrary to plaintiff's suggestion of pretext). Moreover, Konecek had been rated a B player to plaintiff's C player rating. Indeed, the record shows that Konecek had been a service center manager for more than two years longer than plaintiff and had good performance reviews (Chamberlain Aff. I at ¶ 4).  Plaintiff does not challenge Konecek's rating as a B player, nor does he attack the job performance of Konecek. Under these circumstances, the decision to retain Konecek over plaintiff, without more, does not raise an inference of discrimination.

Finally, plaintiff alleges that defendant falsely rated him a C player. "Misguided and unfair personnel assessments are not actionable under the ADEA unless age played a role in the evaluation." *Robinson*, 23 F.3d at 1164 ("That the forced ranking may have resulted in a mistaken assessment of [the plaintiff's] value to [the company] does not, in and of itself, signal cognizable discrimination by the company.") Plaintiff does not even suggest that other members of the protected class received undeserved low ratings. Without some indication that the forced ranking process was merely a cover-up for a scheme to rid the workplace of older employees, plaintiff's subjective view of his own performance does not create an inference of discrimination. *See e.g., Robinson*, 23 F.3d at 1165.

---

[19] Likewise, the Court rejects plaintiff's suggestion that the fact that the company continued to relocate employees after they decided to terminate his employment is circumstantial evidence of discrimination. The fact that the Company had not finished the consolidation when plaintiff was informed that his employment was being terminated is not tantamount to a finding that defendant continued to seek applications for plaintiff's position.

Because plaintiff has failed to meet the heightened standard for a *prima facie* case in a RIF of offering additional evidence that age was a factor in the decision to discharge him, defendant is entitled to summary judgment. *See Barnes*, 896 F.2d at 1465; *LaGrant*, 748 F.2d at 1091. Nonetheless, the Court will continue with its analysis of the age claim, which will reveal that plaintiff has not come forward with even a scintilla of evidence of age discrimination to establish pretext.

### 3.  *Defendant's Legitimate, Non-Discriminatory Reason*

Assuming arguendo plaintiff has established her *prima facie* case, defendant would have been required to proffer a legitimate, non-discriminatory reason for plaintiff's discharge. *See Burdine,* 450 U.S. at 254. The *Burdine* Court emphasized that this burden is merely one of "production" because "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Id.* at 253. Defendant easily meets this minimal burden by representing that plaintiff was discharged as part of a reduction in force. Further, there is no suggestion that, but for the consolidation of the two companies' service centers and the need to eliminate excess personnel, plaintiff was in immediate jeopardy of losing his job.

### 4.  *Pretext*

Thus, the burden would have shifted back to plaintiff to demonstrate that the proffered reason is nothing more than a pretext for unlawful discrimination. *See Burdine*, 450 U.S. at 255. Plaintiff initially relies on the evidence offered in support of his *prima facie* case that he believes demonstrates that defendant impermissibly considered age in the consolidation process (Docket No. 48 at 35). According to plaintiff, "no more is required to establish that Defendant's reasons are pretextual." *Id.* While it is true that evidence supporting a *prima facie*

18

case may also be relied upon in establishing pretext, as previously discussed, plaintiff's proffered evidence does not raise even an inference of age discrimination. *Compare Henry v. Lennox Industries, Inc.*, 768 F.2d 746, 751 (6th Cir. 1985) (in some cases, a plaintiff's initial evidence will suffice to discredit the defendant's proffered explanation). The reasons for rejecting this offering at the pretext stage are the same as those already identified in the discussion of plaintiff's *prima facie* case.

Plaintiff does not, however, rest on this evidence. Rather, the focus of plaintiff's pretext argument is his attack upon the SIT's consolidation process. Plaintiff observes that "[w]hen an employer fails to comply with its own policy, the fact-finder is entitled to find its articulated reason pretextual" (Docket No. 48 at 39). *See Christie v. Foremost Ins. Co.*, 785 F.2d 584, 586-587 (7th Cir. 1986). While plaintiff has, once again, advanced a general and true statement relating to employment law and reductions in force, this general proposition of law does not find application in the record.

Plaintiff first attacks the consolidation process by challenging the ratings and the rankings because they were based on subjective criteria and were, in his opinion, inaccurate.[20] As previously stated, a mistake in ranking or rating an employee is not tantamount to discrimination. *See Robinson*, 23 F.3d at 1164. Moreover, as the Sixth Circuit observed in *Smith v. Allstate Ins. Co.*, 195 Fed. Appx. 389, 396 (6th Cir. 2006), "the fact that [an] evaluation system used may not have been the best tool for evaluating employee performance does not show that the RIF based on evaluations made under that system was not proper." In finding for the employer, the court in *Smith* specifically rejected the employee's argument that basing

---

[20] As evidence that the ratings and rankings were both inaccurate and a farce, plaintiff notes that, despite his reported faults, the Company had not disciplined him under the Company's disciplinary policy. It is an unfortunate reality, however, that in a reduction in force, competent employees will lose their jobs. *LaGrant*, 748 F.2d at 1090. The fact that plaintiff's performance was ranked among the lowest of current employee managers does not mean that, but for the consolidation, plaintiff was likely to be disciplined or discharged.

decisions relating to a reduction in force on subjection evaluations arguably inadequate to assess employee work performance was probative of animus. *Id.* at 396. *See also Hardin v. Hussmann Corp.*, 45 F.3d 262, 265 (8th Cir. 1995) ("a company does not need to provide objective criteria for determining who should be discharged to make the RIF "legitimate.") The Second Circuit also rejected an attack upon the subjective criteria used in a RIF, noting that any system that makes employment decisions in part on subjective grounds "may result in outcomes that disproportionately impact older workers; but at least to the extent that the decisions are made by managers who are in day-to-day supervisory relationships with their employees, such a system advances business objectives that will usually be reasonable." *Meacham v. Knolls Atomic Power Laboratory*, 461 F.3d 134, 146 (2nd Cir. 2006).

Without question, defendant's SIT relied upon both objective and subjective criteria in rating and ranking its managers during the consolidation process. This Court does not sit as a "super-personnel department" and it will not second-guess the business practices of employers. *Meacham*, 461 F.3d at 141. Defendant was entitled to assemble what was, in its opinion, the best team of service center managers available. *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116-1117 (6th Cir. 2001). Defendant was also entitled to identify and utilize whatever criteria it thought appropriate to assemble this team, so long as the criteria were not discriminatory and the process was not motivated by unlawful age animus. The fact that not all members of the SIT were familiar with plaintiff's work performance does not cast doubt on the process, where the managers responsible for the day-to-day supervision of the employees were asked for input (Reynolds Dep. at 121-122; Bass Dep. at 186). *See Meacham,* 461 F.3d at 146. Moreover, those managers all agreed with plaintiff's ranking and his rating as a C player (Reynolds Dep. at 121; Bass Dep. at 186).

Plaintiff also claims that the SIT process was a sham because the decision as to which service center managers were to be let go was made prior to the December 2004 meeting (Docket No. 48 at 7-9). Members of the SIT uniformily testified, however, that no decision was made prior to the December 2004 meeting (Weber Dep. at 170; Swift Dep. at 51; Dallaglio Dep.  at 13). The record does contain evidence that Weber, Bass and Reynolds met prior to the December meeting to discuss the service center managers and to prepare the presentation that was to be given at the December meeting (Weber Dep. at 166). It is clear that certain members of the SIT had a good indication of how each of the service center managers would be rated before the December meeting (Bass Dep. at 141). There is nothing sinister in the fact that members of the SIT met to prepare for the meeting where important personnel decisions were to be made. Nor does the fact that Weber, Bass and Dallaglio may have reached a preliminary decision before December of 2004 demonstrate age animus. *See Robinson*, 23 F.3d at 1164 (the fact that the employer had made a preliminary decision to discharge plaintiff *two years before* the forced ranking does not even "hint of discrimination").

Finally, plaintiff complains that no head-to-head comparison between himself and Konecek occurred at the December 2004 meeting, and that some of the people who participated in the ultimate decision to terminate him and other employees did not have any personal knowledge of plaintiff's job performance. Plaintiff ignores the fact that the decisions were made based upon forced rankings and ratings given to all the managers. Like a standardized test, these evaluation tools were designed to allow the SIT and the area managers to compare and contrast all of the affected Black & Decker and PCD service center managers. It would have been impossible for the entire SIT to have personal knowledge of each employee. While plaintiff may disagree with the methodology used, it does not demonstrate pretext. *See Smith*, 195 Fed.

Appx. at 396.

**5.**    *The Cincinnati Service Center Position*

Plaintiff also alleges that his non-selection for the Cincinnati Service Center Manager position was the result of age discrimination. This position was awarded to Kenston Demaray, age 41. It is undisputed that Demaray had been designated an A player, and had been employed by Black & Decker as a service center manager for five years longer than plaintiff. Defendant contends that the decision to select Demaray over plaintiff was linked to the their respective ratings (Jones Dep. at 65-67).

Defendant was under no obligation to transfer plaintiff as a result of the reduction in force. *Ridenour*, 791 F.2d at 57; *Sahadi v. Reynolds Chemical*, 636 F.2d 1116, 1117 (6th Cir. 1980). Of course, if an employer does attempt to place certain employees in openings during the course of a reduction in force, it cannot use age as a motivating factor when deciding whom to transfer. *Hemmert v. Quaker Oats Co*., 157 F. Supp. 2d 864, 876 (S.D. Ohio 2000).

As was the case with Konecek, plaintiff does not question Demaray's work performance or his rating as an A player. Rather, he simply proclaims that he "has offered overwhelming evidence that he was better qualified than the substantially younger candidates hired or retained in other positions" (Docket No. 48 at 33). Yet, he has not identified a single younger service center manager who was retained and was less qualified than he. Moreover, while he claims that he should have been considered for other positions, it is undisputed that the Cincinnati Service Center Manager position was the only position he sought with defendant after his position was eliminated. In fact, plaintiff admits that Jones directed him to defendant's intranet job posting site but that he did not take advantage of it (Plaintiff Dep. at 106-108).

Finally, plaintiff suggests that while there was an effort to ensure that

younger employees designated with a C player rating were retained or offered other positions, age protected C players did not receive similar consideration. The record simply does not support this assertion. Plaintiff was not treated any differently than 30-year old Lonnie Williams, 33-year old Jason Barnhart, 38-year old James Ponder, and 39-year old Paula Marr, all of whom received a C player rating and were discharged without being awarded other positions with defendant (Chamberlain Aff. I at ¶ 5, Ex. 3). In contrast, 56-year old Bill Preacher and 51-year old Mike Dombrowski, also designated as C players, were retained in their markets due to the unique circumstances associated with those markets. *Id*. Plaintiff has failed to establish that the transfer decisions were the result of age animus.

### B.  **Public Policy**

> In his fourth cause of action, plaintiff alleges that defendant's decision to terminate his employment and refusal to transfer him into another position violated the public policy of the State of Ohio (Complaint at ¶¶ 28-32). However, when a statutory remedy is available, no common law claim will lie. *Carrasco v. NOAMTC Inc.*, 124 Fed. Appx. 297, 304 (6th Cir. 2004). In *Wiles v. Medina Auto Parts*, 96 Ohio St. 3d 240, 244 (2002), the court observed:

> Where, as here, the sole source of public policy opposing the discharge is a statute that provides the substantive remedies for its breach, the issue of adequacy or remedies becomes of particularly important component of the jeopardy analysis […]. Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests.

Because plaintiff has a remedy available to him under the ADEA and Ohio Rev. Code § 4122, plaintiff cannot maintain the same claim under Ohio common law. *See Carrasco*, 124 Fed. Appx. at 304 (no common law public policy claim where plaintiff also brought a claim under Title VII); *Feichtner v. Roman Catholic Archidiocese*, 2006 U.S. Dist. LEXIS 12834 (S.D. Ohio Mar. 7,

2006) (no public policy claim available in age discrimination cases); *Williams v. Allstate Ins. Co.*, 2005 U.S. Dist. LEXIS 40800 (N.D. Ohio May 31, 2005) (no public policy claim in ADEA suit). As such, plaintiff's public policy claim is dismissed.

### C.  Disability Discrimination

Plaintiff believes that his discharge and his non-selection for the Cincinnati position was also motivated, in part, by disability discrimination (Complaint at ¶¶ 23-27). While plaintiff raised his disability claim under both the American's With Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, and Ohio Rev. Code § 4112.02, he claims in defense of defendant's summary judgment motion that he is "pursuing his disability claim solely under O.R.C. 4112" (Docket No. 48 at 43, fn. 240). Specifically, plaintiff now claims that he was "regarded" as disabled and that he was discriminated against on that basis.

Ohio Rev. Code § 4112.01(A)(13) defines "disability" as:

[A] physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment.

To prove that one is "regarded" as having an impairment, plaintiff must show that his employer "entertained 'misperceptions about the individual--it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.'"[21] *Swanson v. Univ. of Cincinnati,* 268 F.3d 307, 318 (6th Cir. 2001), *quoting Sutton v. United Air Lines*, 527 U.S. 471, 489 (1999);

---

[21] Plaintiff insists that, pursuant to *Johnson v. Metrohealth Med. Ctr.,* 2004 Ohio 2864, 2004 Ohio App. LEXIS 2544 (Ohio Ct. App., Cuyahoga County June 3, 2004), disability claims under § 4112 do not require a showing that the employee was substantially limited in a major life activity for purposes of showing that he was "regarded as" disabled. Defendant insists that case law after the decision in *Johnson* still require such a showing under § 4112. *See Hayest v. the Cleveland Clinic Found.*, 2006 U.S. Dist. LEXIS 76013 , *7 (N.D. Ohio October 19, 2006), *citing Vickers v. Wren Indus.*, 2005 Ohio 3656, 2005 Ohio App. LEXIS 3366, *34 (Ohio Ct. App., Montgomery County July 8, 2005). While the weight of the authority appears to be contrary to the *Johnson* holding, the Court need not reach this issue because even without such a requirement, plaintiff cannot establish that he was regarded as disabled.

*Cox. v. Kettering Med. Ctr.*, 2005 Ohio 5003, 2005 Ohio App. LEXIS 4526 (Ohio Ct. App.,
Montgomery County Sept. 23, 2005).

           As support for his claim that he was "regarded" as being disabled, plaintiff
looks solely to one short conversation he had with Jones wherein he advised Jones that he was on
antidepressants and was seeing a psychiatrist (Plaintiff Dep. at 72-73, 77-78).   According to
plaintiff, Jones did not wish to discuss it because it was a "personal thing" (Plaintiff Dep. at 78).
Without proof, plaintiff surmises that Jones believed that "depressed people couldn't perform as
well as undepressed [sic] people" (Plaintiff Dep. at 194-197). He further concludes that Jones
must have told the other members of the SIT about plaintiff's perceived disability, and that this
perception played a role in the decision to discharge him (Plaintiff Dep. at 194-197). There was
nothing about plaintiff's brief conversation with Jones that would have suggested that Jones has
a bias against those who suffer from depression, and plaintiff admits that he never heard Jones
express any negative beliefs about depression. *Id.* Ultimately, plaintiff only offers his suspicion
that "it [plaintiff's depression] may have been a part of the decision. I believe [Jones] probably
told his supervisors about it, too." *Id*.

           Plaintiff admits, however, that he can offer nothing more than his
speculation that Jones told any other member of the SIT about plaintiff's condition or that any
"perception" by the SIT that he was disabled played a role in the employment decisions. To the
contrary, members of the management team present at the early December 2004 meeting testified
that health issues were not a factor in those decisions (Jones Dep. at 156-57; Bass Dep. at 187;
Swift Dep. at 170-171). Moreover, Bass and Reynolds specifically testified that they knew
nothing about plaintiff's medical condition (Bass Dep. at 171-172; Reynolds Dep. at 58).
Additionally, Dallaglio's knowledge of it was limited to a 10 second conversation that plaintiff

does not even remember having (Plaintiff Dep. at 78-79; Dallaglio Dep. at 58-59).

Likewise, with respect to the decision not to transfer plaintiff to fill the Cincinnati position, plaintiff has offered no evidence that it was fueled by a perception that he was disabled. He, again, points to that brief conversation he had with Jones, and plaintiff guesses that Jones did not want to discuss because if was a "personal thing" (Plaintiff Dep. at 78). He also notes that, in responding to the administrative charge of discrimination, defendant "initially contended that Jones did not know about Suslovic's depression" (Docket No. 48 at 43). In actuality, defendant merely indicated in its position statement that "Mr. Jones […] is not aware of any major medical condition suffered by Charging Party. To the best of Black & Decker's knowledge, Charging Party does not have any ADA-protected disability" (Plaintiff Appx. Ex. 17). The fact that Jones did not want to discuss plaintiff's personal medical condition, and the fact that defendant maintained, and continues to maintain, that plaintiff is not "disabled" for purposes of the ADA, does not establish that its legitimate, non-discriminatory reason for not selecting him for the Cincinnati position was merely pretext.[22]

## IV.

## CONCLUSION

Plaintiff has taken liberties with the record and the relevant case law in the hope of generating genuine issues of material fact. While there are factual disputes in the record, none are material and none cast doubt on defendant's legitimate non-discriminatory reason for discharge or for the failure to transfer. Because plaintiff has failed to raise even the inference that the employment decisions were motivated by unlawful age or disability discrimination, defendant is entitled to summary judgment on all claims.

---

[22] Plaintiff also suggests that the fact that Jones and Dallagalio believed that plaintiff had trouble dealing with subordinates was evidence that they perceived him as disabled (Docket No. 48 at 44). Plaintiff, however, offers no evidence that links their view of plaintiff's interpersonal relations shortcomings with his depression.

For all of the foregoing reasons, as well as all of the reasons set forth in defendant's memorandum and reply in support of its motion for summary judgment, defendant's motion for summary judgment (Docket No. 32) is **GRANTED**. This case is **DISMISSED**.

**IT IS SO ORDERED.**

Dated: July 23, 2007                                                    *s/ Sara Lioi*_____
                                                                       Hon. Sara Lioi
                                                                       United States District Judge